CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 20 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| TAYON SMITH, JORDAN NEWBERRY,<br>CEDRIC REID, and TROY OAKES, ) | CASE NO. 7:12CV00032 |
| Plaintiffs, ) | MEMORANDUM OPINION |
| vs. ) | |
| HAROLD CLARKE, ET AL., ) | By:  James C. Turk<br>Senior United States District Judge |
| Defendants. ) | |

Teyon Smith, Jordan Newberry, Cedric Reid, and Troy Oakes, Virginia inmates

proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that their

assignment to the "structured living unit" ("SLU") at Pocahontas Correctional Center ("PCC")

violates their constitutional rights.  Upon review of the record, the court summarily dismisses

this action.

## I

Plaintiffs allege the following facts from which their claims arise.  The Pocahontas

Orientation Handbook defines the SLU as a general population housing pod operated for

offenders who have demonstrated a high need for structure.  An inmate may be considered for

assignment to the SLU when:  a) he has been convicted of any of the following infractions in the

past six months:  Any 100 series charge or any 212, 218, or 239; b) he has been convicted of

three Category II Offenses within six months; c) he has demonstrated poor interpersonal

relations with other offenders or staff  and has exhibited behavior that is not conducive to the

orderly operation and programmatic goals of the institution; d) he is released from a special

housing bed; and d) he is newly transferred to PCC and meets any of the other listed criteria.  An

inmate's unit manager or pod officer can recommend an inmate for SLU assignment, based on

any of these criteria, but the warden or the treatment program supervisor ("TPS") must finalize the inmate's assignment to the SLU.  Inmates do not receive a hearing before or after being assigned to the SLU and have no opportunity to appeal this housing assignment.  Once assigned to the SLU, an inmate must complete the 90-day mandatory SLU program and remain free of any rule violations in order to be returned to the general population.

Once an inmate is assigned to the SLU, officers move him to the separate SLU area of the prison.  If he refuses to move, officers threaten him with the use of force and/or assignment to a higher security institution, which adversely affects that inmate's good time earning level.  Each newly assigned SLU inmate receives a handout about the purpose of the unit, which is to provide a coherent plan to assist prisoners in acquiring and maintaining responsible and productive behavior so that they can adjust to the requirements demanded in an environment of prison."  At least one officer escorts SLU each inmate for any movement.  SLU inmates have no contact with inmates in the general population.

Inmates in SLU are subject to limits on privileges, property, and activities.  SLU inmates have no opportunity for religious congregation.  Muslim prisoners receive Ramadan meals outside fasting hours, but are not permitted any other religious activities with other Muslim inmates, even other Muslims housed in SLU, and are not permitted to participate in the feast celebrating the end of Ramadan.  SLU inmates may keep their personal television sets and CD players, but the SLU cells have no electricity between 10:15 pm and 6:00 a.m., in contrast to PCC general population cells, which have electricity all the time.  Every day, SLU prisoners receive one hour of pod recreation each morning and each evening, when they may shower, watch television, or play table games.  SLU prisoners also receive one hour of outside recreation each weekday afternoon.  Under these restrictions, SLU inmates stay in their cells seven hours

2

more per day than general population inmates, who may participate in pod recreation for at least

two hours in the morning, four hours in the afternoon, and four hours in the evening.  The

reduced pod recreation hours also limit the times when SLU inmates may telephone loved ones.

     SLU inmates have the same bedding as the general population inmates, but must wear the

SLU uniform, a two-piece burgundy top and pants.  General population inmates wear blue jean

pants and blue shirts, and may also wear sweatpants or shirts.  SLU inmates receive the same

visitation privileges as general population inmates do, but the SLU uniforms make them stand

out in the visitation area.  SLU inmates may spend only half as much money as general

population inmates may spend for commissary items each month.  Both groups may purchase the

same items, but SLU inmates have no microwave privileges.  SLU inmates have no physical

access to the law library or the general purpose library, but may request copies of legal materials.

     Each of the four plaintiffs filing this civil action was assigned to the SLU for a period of

more than 90 days:  Teyon Smith, from October 17, 2010 until April 12, 2011 (187 days); Jordan

Newberry, from May 25, 2010 until March 24, 2011 (203 days); Cedric Reid, from January 12,

2011 until May 12, 2011 (114 days); and Troy Oakes, from April 7, 2011 until July 12, 2011 (96

days).  Plaintiffs assert that their assignment to the SLU constituted a major change in their

conditions of confinement that prison officials should not have imposed on them without

affording them notice and a hearing.  Plaintiffs assert that internal classification forms related to

SLU assignment state that an inmate should receive a due process hearing, and that the defendant

officials acted negligently by failing to provide such procedural protections.  Because SLU

inmates are treated differently than general population inmates, plaintiffs also assert an equal

protection claim.  Plaintiffs seek compensatory and punitive damages.

## II

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). In this context, the court may dismiss as frivolous a claim based on "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988).

An inmate's assignment to administrative segregation does not exceed the sentence imposed on him in such an extreme way as to give rise to the protection of the Due Process Clause by its own force. Sandin v. Conner, 515 U.S. 472, 485 (1995). Moreover, mere limitations on privileges, property, and activities for administratively segregated inmates do not constitute "atypical and significant" hardship in relation to the ordinary incidents of prison life as required to create a liberty interest, triggering federal due process protection. Id.; Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship). Allegations that prison officials violated prison procedures by changing plaintiff's housing assignment do not amount to a constitutional violation actionable under § 1983. Riccio v. County of Fairfax, Virginia, 907 F.2d

4

1459, 1469 (4th Cir. 1990) (holding that where state law grants more procedural rights than the Constitution requires, state official's violation of state procedure is not a federal due process issue).

The court cannot find that plaintiffs' allegations state any claim that their brief assignments to SLU deprived them of any federally protected liberty interest. The minor and temporary differences in living conditions and allowed activities and privileges in the SLU, as compared with general population conditions, activities, and privileges, are not so atypical as to impose any significant hardship on SLU participants. Therefore, the court cannot find that plaintiffs had any federal due process right to notice or a hearing related to this status change. Even taking as true plaintiffs' allegation that prison regulations required officials to provide inmates with a hearing related to SLU assignment, such a violation of state procedural rules does not provide grounds for any federal due process claim actionable under § 1983. For these reasons, the court summarily dismisses as frivolous plaintiffs' claims that their assignment to SLU violated federal due process rights. See Quarles v. Dillman, Civil Action No. 7:11CV00217, 2011 WL 1869961, *2 (W.D. Va. 2011) (dismissing under § 1915A(b)(1) inmate's § 1983 claims regarding structured living unit at Green Rock Correctional Center).

To succeed on an equal protection claim, plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Once plaintiff states facts supporting these first two elements of the claim, he must also demonstrate that the challenged treatment is not rationally related to any legitimate penological interest. Id.

5

The court finds no respect in which plaintiffs' allegations about their assignment to SLU support an equal protection claim. Plaintiffs' stated facts about the SLU clearly reflect that only inmates meeting certain criteria are subject to the restrictions that SLU assignment entails. Plaintiffs do not claim that officials treated them differently than other inmates with similar behavioral histories. Moreover, the SLU restrictions plaintiffs describe are clearly related to legitimate penological interests in encouraging inmates to control their behavior and maintain institutional discipline as necessary to allow them the greater freedoms afforded to general population inmates.

For the reasons stated, the court concludes that plaintiffs' complaint fails to state any constitutional claim actionable under § 1983 and dismisses the action without prejudice, pursuant to § 1915A(b)(1), as legally frivolous. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiffs.

ENTER: This _20th_ day of March, 2012.

_James C. Turk_
Senior United States District Judge

6